**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| KAREN SEARLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-02519-TWP-MJD |
| ) | |
| THE SALVATION ARMY, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment (Filing No. 57). After being terminated from her employment with The Salvation Army ("TSA"), Plaintiff Karen Searle ("Searle") filed this action alleging discrimination in violation of the Americans With Disabilities Act ("ADA") and interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"). (Filing No. 1.) The parties stipulated to dismissal with prejudice of Searle's ADA claim. (Filing No. 56.) TSA now moves for summary judgment on Searle's two remaining FMLA claims, arguing they fail as a matter of law. For the reasons discussed below, TSA's Motion for Summary Judgment is **granted in part and denied in part**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Searle as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.** **Searle's Employment at The Salvation Army**

The Salvation Army, a denomination of the Christian church, is a non-profit organization engaged in providing services to the homeless, addicted, poor, or other vulnerable members of the population. Searle's employment with the organization began in October 2007, when she was hired as a Human Resource Specialist at the Harbor Light Center ("Harbor Light") located in Indianapolis, Indiana. (Filing No. 58-2 at 9-10.) Shortly thereafter, her title was changed to Human Resource Manager. *Id.* at 11. Searle reported to Harbor Light's Executive Director, Lieutenant Esteban Pommier ("Pommier"). She also frequently worked with David Loyd ("Loyd"), the Divisional Director of Human Resources at the Indiana Division Headquarters. *Id.* at 15-18.

Searle's duties at TSA included managing employee time and attendance, tracking and approving employee sick time requests, and managing FMLA compliance for other TSA employees. *Id.* at 21-25. This last duty required her to consult TSA's Central Territory Employee Handbook, which contained TSA's FMLA policy as well as other company policies on things like sick leave, paid time off, and disability accommodation. *Id.*; Filing No. 58-4. When an employee at Harbor Light needed FMLA leave, Searle's role was to guide the employee through the process and answer any questions the employee had. (Filing No. 58-2 at 25-26.)

During her employment, Searle had taken two FMLA leaves, in January 2015 and again in May 2015, in relation to rotator cuff surgery. *Id.* at 26-29. In February 2016, Searle told Loyd she was "ill" and asked him to keep the information to himself. *Id.* at 30. Loyd replied, he was "sorry to hear that" and Searle should let him know if there was anything he could do for her. *Id.* at 31. At some point after that, Searle also notified Divisional Secretary of Business Major Dan Hull ("Hull") that she had precancerous polyps of the colon. *Id.* at 52. Hull replied that Loyd had

already notified him of Searle's medical situation. *Id.* at 53. On or about April 4, 2016, Searle submitted a Time Off Request Form indicating she needed time off for testing at the hospital. ([Filing No. 59-7](#).) Pommier approved and signed off on the Request on April 5, 2016. *Id.*

On August 18, 2016, Searle sent Loyd an email notifying him that she was going to receive treatment in the form of an MRI on August 29, 2016, a colonoscopy on September 19, 2016, and surgery on her liver which had not yet been scheduled at the time she sent the email. ([Filing No. 59-8](#).) Loyd responded that same day: "Thank you Karen. I hope everything goes well." ([Filing No. 58-7](#).) Searle did not request FMLA leave at this time, nor at any other time in 2016, instead opting to use her available paid time off to cover any time she missed for doctor's appointments. ([Filing No. 58-2 at 29](#).)

## B. Searle's Termination

On September 15, 2016, Loyd, Pommier, and Major Beth Petrie ("Petrie") notified Searle that her position was being eliminated and that she would be terminated effective October 15, 2016. *Id.* at 35. That meeting occurred just 28 days after Searle had alerted Loyd to her ongoing medical issues and upcoming doctor's appointments. Following her termination notice, on October 5, 2016, Searle's counsel sent TSA a letter complaining of FMLA violations. ([Filing No. 59-3 at 39](#).) Loyd received the letter and discussed it with Pommier, Hull, and Petrie. *Id.* at 40.

TSA attributes the elimination of Searle's position to budget reduction. In July 2016, TSA had a budget shortfall of approximately $675,000.00, which Hull asked for help from management to reduce. ([Filing No. 58-8 at 18-19](#); [Filing No. 58-9](#).) In late spring or early summer 2016, Hull inquired of Loyd regarding which position from Human Resources ("HR") could be eliminated if the need arose. ([Filing No. 58-8 at 32](#); [Filing No. 58-10 at 15-17](#).) Loyd said that he did not want to lose anyone in his department, but if a position had to be eliminated, he would recommend

Searle's position which oversaw employees only at Harbor Light, whereas all the other positions in the HR department served the entire Indiana Division. (Filing No. 58-10 at 16.)

The Divisional Finance Board ultimately accepted Loyd's recommendation and, on August 11, 2016, made the decision to eliminate Searle's position. (Filing No. 58-8 at 25-26.) TSA determined that some of the clerical duties Searle had performed could be done by a newly created part-time HR Clerk position at Harbor Light that would be paid a much lower rate than Searle had been paid. *Id.* at 34-36; Filing No. 58-10 at 22. Loyd would absorb the remainder of Searle's workload. *Id.*

## C.    Post Notification

When Loyd and other TSA staff members informed Searle that her position was being eliminated, they also informed her of the new, part-time HR position that would be available. (Filing No. 58-2 at 36-37.) But Searle chose not to apply for that position because she needed a full-time position with health benefits. *Id.* at 37-38. TSA staff encouraged Searle to apply for an open full-time administrative assistant position at Harbor Light, which Searle did, despite feeling overqualified for it. *Id.* at 38-39. Searle applied for the administrative assistant position by letter, which was addressed to Pommier and dated October 14, 2016. (Filing No. 59-10.) In her letter, Searle explained that she was well-suited for the position, having done many of the tasks required by the position in her prior role when the administrative assistant was out of the office. *Id.* She also explained that because of her experience at Harbor Light she would need very little training to learn the new job. *Id.*

Pommier interviewed four or five candidates for the position, including Searle. (Filing No. 58-13 at 20.) Searle's initial interview with Pommier was attended by Loyd, who expressed to Pommier that Searle was completely qualified for the position. (Filing No. 59-3 at 33.) Loyd only

attended Searle's interview because she was an internal candidate; he did not attend any of the other interviews for the position. *Id.* at 32-33. Two applicants—Searle and Alana Hodges ("Hodges")—were asked to come in for a second interview. (Filing No. 58-13 at 30.)

As part of this second interview, both applicants were given ten minutes to reproduce a written memorandum as accurately as possible to test their word processing skills. (Filing No. 58-2 at 65-67; Filing No. 58-14; Filing No. 58-15; Filing No. 58-16.) Harbor Light had never previously required applicants to take this kind of test for any other job selection process. (Filing No. 58-13 at 29-30.) Hodges' reproduction bore a closer resemblance to the sample memorandum than Searle's did. (Filing No. 58-15; Filing No. 58-16.) Pommier testified in his deposition that he had the impression before this interview that Searle was not a skilled user of Microsoft Word and Excel, but that limitation had not prevented her from doing her job as Human Resource Manager. (Filing No. 58-13 at 26-33.) Searle attributes her poor performance on the test to the fact that she was rushed during her second interview because it was scheduled between two doctor's appointments. *Id.* at 37-38.

Pommier recommended to the Divisional Finance Board that TSA hire Hodges because he thought she demonstrated a greater level of professionalism in the interview process, he believed she wanted the job more than Searle did, and he thought Hodges outperformed Searle on the typing test. *Id.* at 29-47. Hodges was offered the job and because Searle had not applied to any other positions at TSA, her employment ended on November 3, 2016.[1] (Filing No. 58-2 at 39.)

---

[1] Searle's termination was initially scheduled for October 15, 2016, but TSA extended it to October 23, 2016 because the earlier date was a week shy of her vesting in certain retirement benefits. It was then extended to November 3, 2016 when Searle was in the running for the administrative assistant position. (Filing No. 58-2 at 38-39.)

## II.  **LEGAL STANDARD**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of the claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.    DISCUSSION

Searle alleges that within weeks after informing her immediate supervisor that she would need to undergo surgery and would need time off from work, she was informed that her employment was being terminated. She maintains that her employer interfered with her rights to FMLA protected leave under the statute. In addition, she alleges her termination was in retaliation for exercising, and attempting to exercise her right to take leave under the FMLA.

### A.    FMLA Interference

TSA moves for summary judgment on Searle's FMLA interference claim, arguing it fails as a matter of law.  Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  To establish a claim for FMLA interference, Searle must show (1) she was eligible for FMLA leave, (2) TSA is an employer covered by the FMLA, (3) she was entitled to take FMLA leave, (4) she provided sufficient notice of her need for FMLA leave, and (5) TSA denied her FMLA benefits to which she was entitled.  *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).  TSA does not dispute the first three elements, however, it argues that Searle's interference claim fails on both the fourth and fifth elements. (Filing No. 58 at 9.)

#### 1.    Notice

TSA challenges the fourth element of an interference claim and argues that Searle did not provide sufficient notice of her need for FMLA leave.  The FMLA's notice requirements "are not onerous.  An employee need not mention the FMLA in his leave request or otherwise invoke any of its provisions."  *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015)

(quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006)). For foreseeable FMLA leave, an employee "must provide the employer at least 30 days of advance notice before FMLA leave is to begin" and the employee "shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302. "It is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." *Preddie* at 816 (quoting *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602,616 (7th Cir. 2001)). Additionally, "adequacy of notice is a fact-specific question." *Burnett* at 479.

TSA argues Searle never provided notice of a medical condition that required FMLA leave, instead, she merely alluded to undefined illnesses. (Filing No. 58 at 9-10.) She never provided a doctor's note or was told by a doctor that she could not work in 2016. *Id.* Although she informed Loyd that she was having medical issues that required an MRI and colonoscopy, she never communicated any intent to seek FMLA leave. *Id.* at 10. Moreover, Searle concedes that she never requested FMLA leave in 2016 because she elected to use her paid time off to cover absences related to her medical issues. *Id.* at 11 (citing Filing No. 58-2 at 29, 35). TSA reiterates that Searle understood the FMLA process because she had recently taken leave, and as the Human Resource Manager, she was the person responsible for providing forms and tracking FMLA leave for other employees. *Id.*

TSA cites *Collins v. NTN-Bower Corp.*, to support its position. In *Collins*, the Seventh Circuit affirmed summary judgment in favor of an employer on an FMLA claim because the employee did not give proper notice. 272 F.3d 1006 (7th Cir. 2001). The court found the employer did not violate the FMLA by discharging Collins, an employee with spotty attendance record, after she called in sick for two days, when Collins only stated as reason for her absence was that she

was "sick," without other notice, until she filed suit that her medical condition might be serious or that the FMLA otherwise might be applicable. 272 F.3d at 1008. *Collins* instructed lower courts on both the content and the timing required to give proper notice of FMLA leave. Although it made clear that informing an employer one was "sick" is too vague to give notice of FMLA leave, *Collins* also acknowledged that "workers need not expressly assert their rights under the FMLA" to provide notice. *Id.*

The timing aspect of *Collins* is irrelevant here, as Searle made her medical condition known to her supervisors long before she took significant time off to receive treatment. Searle told Loyd she was "ill" in February 2016, and thereafter told Pommier she had precancerous polyps of the colon. (Filing No. 58-2 at 30, 52.) Even if those conversations were not enough to provide notice, Searle certainly provided it on August 18, 2016, when she emailed Loyd that she had scheduled procedures with doctors—an MRI on August 29, 2016, a colonoscopy on September 19, 2016, and anticipated liver surgery that had not yet been scheduled. (Filing No. 59-8.) Under the FMLA, "[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on…planned medical treatment for a serious injury or illness." 29 C.F.R. § 825.302. Searle began informing her employer of her medical condition months before they inhibited her attendance, and her email to Loyd came more than thirty days before her colonoscopy and her liver surgery. Indeed, the drawn out five- or six-month timeline on which Searle informed her employers about her medical condition is suggested by *Collins* because, as the Seventh Circuit has said, "[t]he point of *Collins* is that it is entirely appropriate under the FMLA for an employee to give accumulating information about a medical condition as it evolves." *Burnett* at 481.

The remaining question is whether the content of Searle's communications with Loyd and Pommier was sufficient to put them on notice of her serious health condition. Searle argues she notified her superiors of her medical condition and its seriousness in early 2016 when she requested time off for medical appointments and procedures throughout 2016, and she emailed Loyd in August 2016 detailing the specific medical procedures she required. (Filing No. 59 at 13.) She argues that, "[a]ll of this provides sufficient notice of Searle's FMLA qualifying condition, regardless of whether Searle directly requested FMLA leave, and whether she instead used paid time off." *Id.* TSA replies that Searle's communications were "vague," that she did not follow TSA's procedures for requesting leave, and that Searle's communications with her superiors were not substantive enough to give notice of her medical condition. (Filing No. 62.)

TSA's argument exaggerates the Seventh Circuit's notice requirements for an FMLA interference claim. To provide notice, a plaintiff need not expressly mention the FMLA, provide a doctor's note saying she cannot work, or comply with her employer's internal procedures for requesting FMLA leave.

> [T]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. [She] doesn't have to write a brief demonstrating a legal entitlement. [She] just has to give the employer enough information to establish probable cause, as it were, to believe that [she] is entitled to FMLA leave.

*Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004). "The employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Burnett* at 479 (citing *Aubuchon* at 953) (emphasis deleted).

Reviewing the record in the light most favorable to Searle and drawing all inferences in her favor, the Court cannot conclude as a matter of law that she failed to put TSA on notice that she had "a serious health condition" that could render her unable to perform her job, a basis for FMLA leave. 29 C.F.R. § 825.112(a)(4). Searle notified Loyd and Hull early in the year that she

was ill and specifically heard from Hull that Loyd had told him she had precancerous polyps of the colon. ([Filing No. 58-2 at 52](#).) On April 4, 2016, she asked for time off to undergo medical tests, and Pommier granted that request. On August 18, 2016, she told Loyd that she would need to take time off on August 29, 2016 for an MRI, on September 19, 2016 for a colonoscopy, and a future undetermined date for a surgical procedure. ([Filing No. 59-8](#).) When considered in context, Searle's declarations in her August 18, 2016 email "were more than a vague and untethered claim of sickness." *Burnett* at 481. Given the low bar an employee must clear to satisfy the notice prong of an FMLA interference claim, a reasonable factfinder could determine that Searle's communications and conversations with her superiors were sufficient to put TSA on notice of her condition that might entitle her to FMLA leave. The Court's inquiry does not end here, as TSA also challenges the fifth element of Searle's interference claim.

### 2. **Denial of FMLA Benefits**

TSA challenges Searle's claim that TSA denied her FMLA benefits to which she was entitled. ([Filing No. 58 at 12](#).) It is undisputed that TSA did not deny Searle FMLA leave nor did Searle expressly request it. Instead, the contention is that TSA denied her FMLA benefits when it "terminated Searle – and refused to hire her into a different position for which she was qualified – in the midst of her taking time off for medical appointments for her own serious health condition and before she could take extended FMLA leave for her liver surgery and subsequent recovery." ([Filing No. 59 at 14](#).) In the Seventh Circuit, FMLA interference "encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' and 'discouraging an employee from using such leave.'" *Preddie* at 818 (citing 29 C.F.R. § 825.220(c), (b) (brackets original)). The question before the Court is whether a reasonable jury could determine that, had Searle not notified

TSA of a serious medical issue that might necessitate FMLA leave, she would still be employed at TSA (either as HR manager or as Pommier's administrative assistant).

TSA argues that "there was no prejudice to Searle because, first, she admittedly never requested FMLA leave," instead opting to use her paid time off, and second, "Searle admits she had no problems getting time off for doctor visits whenever she needed it and acknowledges that she suffered no adverse consequences for doing so." (Filing No. 58 at 12.) Searle's theory of the case is that TSA "smiled in her face," allowing her to take time off for intermittent medical issues, but then preemptively eliminated her position in anticipation of her taking an extended medical leave. (Filing No. 59 at 14-15.) According to Searle, TSA then compounded its FMLA interference by "refus[ing] to retain her as a full-time employee in the Administrative Assistant position in October 2016, a job she was qualified for and interested in performing." *Id.* at 15. Searle alleges TSA made two distinct adverse employment actions in her case—first, eliminating her position, and second, refusing to hire her for the administrative assistant position.

a)    **Termination**

TSA maintains it eliminated Searle's position to combat a budget deficit after her supervisors agreed that, while they would rather not terminate anyone, Searle's position was the most expendable. An email from Hull to certain TSA employees documents the budget deficit (Filing No. 58-9) and Loyd testified that when asked by Hull whom he could afford to eliminate from his department, he identified Searle, although he did not wish to eliminate anyone. (Filing No. 58-10 at 15-16.) Hull, in consultation with the HR department and Comptroller Rebecca Carroll, recommended to the Divisional Finance Board that Searle's position be eliminated. (Filing No. 58-8 at 19-20.) In evidence is an August 11, 2016 email from Comptroller Carroll to some TSA staff with the attached budget spreadsheets for fiscal year 2016-17. (Filing No. 58-11.)

In the bottom left hand corner of the first page of the spreadsheet, it indicates that TSA planned to save $39,828.00 in fiscal year 2016-17 by "RIF HL HR; Hire PT HR Clerk." *Id.* at 3. That stood for "Reduction in force. Harbor Light HR, hire part-time HR clerk and eliminate the position and hire a part-time HR clerk." ([Filing No. 58-8 at 35](#).) Comptroller Carroll highlighted this plan in the body of her email. She stated that TSA would offset deficits by changing "an HR position at Harbor Light from part-time to full time yielding a net cost savings of $40k." ([Filing No. 58-11 at 2](#).) The Court infers that this phrasing was an error and that Comptroller Carroll meant to say that they would be changing the Harbor Light HR position from full-time to part-time. That is the only logical way they could save money and that plan is reflected in the attached spreadsheet.

Under the FMLA, an employee who takes leave must, upon her return from that leave, be restored to the position she held when her leave commenced to an equivalent position. 29 U.S.C. § 2614(a)(1). The posture of Searle's case is unusual because she did not take FMLA leave in 2016. She alleges TSA terminated her anticipating that she would take an extended FMLA leave following her surgery. Caselaw in the Seventh Circuit is clear that employers may terminate employees if their continued employment would confer a right, benefit, or position of employment that the employee would not have been entitled to have had the employee not taken FMLA leave. *E.g.*, *Kohls v. Beverly Enter. Wisconsin, Inc.*, 259 F.3d 799, 804-05 (7th Cir. 2001) (affirming summary judgment for the employer because it showed the employee was fired for deficiencies and the employee did not rebut that assertion); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 636 (affirming summary judgment for the employer when it showed the employee was terminated because he had not performed his duties in a competent manner prior to his leave). An employer may "present evidence to show that the employee would not have been entitled to his position even if he had not taken leave; the employee must overcome the employer's assertion." *Cracco* at 636.

TSA has designated evidence which confirms that the decision to eliminate Searle's position was made to reduce a budget deficit. The email sent to TSA superiors noting the fiscal year 2016-17 budget deficit indicated TSA's plan to eliminate Searle's position and give some of her duties to a new part-time HR employee at Harbor Light. (Filing No. 58-11.) The August 11, 2016 email was sent a week before Searle notified Loyd via email that she would need to take time off for an MRI, a colonoscopy, and eventually surgery on her liver. This evidence, in the absence of any countervailing evidence, establishes that TSA's decision to eliminate Searle's position was made to reduce its budget deficit, and that Searle would not have been allowed to maintain the HR manager position regardless of her medical condition or status under the FMLA.

Searle argues that a reasonable juror could find the timing of TSA's decision to terminate her "odd" given that she was a longstanding TSA employee and HR Manager at Harbor Light was a longstanding position. (Filing No. 59 at 14.) She contends that none of her supervisors had any problems with her job performance, that her job was not redundant, and Pommier and Loyd did not want her job to be eliminated. *Id.* But none of those arguments address the specific point, supported by evidence in the record, that eliminating Searle's position was an unfortunate reality for a non-profit organization attempting to reduce a budget deficit. TSA has set forth substantial evidence that Searle was not entitled to remain in her position regardless of whether she planned to take FMLA leave because it would be eliminated either way. Although Searle disputes this conclusion, she offers no evidence to call into question the evidence that TSA made a budgetary decision to eliminate her position. Thus, her FMLA interference claim alleging that she was terminated because she was likely to take FMLA leave fails.

### b)     Administrative Assistant Position

Searle also alleges that she suffered an adverse employment action because she was preparing to take FMLA leave.  She contends TSA committed FMLA interference by "refus[ing] to retain her as a full-time employee in the Administrative Assistant position in October 2016, a job she was qualified for and interested in performing."  *Id.* at 15.  She asserts that, "TSA's abrupt elimination of the position Searle worked in, coupled with TSA's refusal to essentially move Searle into another full-time position for which she was qualified and willing to perform, create a reasonable conclusion that TSA simply did not want Searle employed long enough to use her FMLA leave."  *Id.*

TSA alleges that Pommier chose to hire Hodges over Searle for the administrative assistant position "for three key reasons: (1) he perceived Hodges demonstrated a greater level of professionalisms [sic] during the interview process, (2) he believed Hodges created the perception of wanting the job more than Searle did, and (3) he believed that Hodges outperformed Searle on the typing test."  (Filing No. 58 at 7-8.)  Searle disputes these allegations.  First, she insinuates that requiring the candidates to take the typing test was essentially a pretext to hire Hodges.  Searle argues that Pommier admitted that Searle had successfully replicated job descriptions like the one in the typing test during her time as HR manager and that, had she been asked to undertake that task in her work at TSA, she would have had access to templates that would have made the task much easier.  (Filling No. 59 at 10 (citing Filing No. 59-4 at 44-46.))

Second, Searle argues that the unprofessionalism she displayed in her interview was a result of doctors' appointments she had scheduled both before and afterward.  She asserts that Pommier knew she had scheduled her interview between doctors' appointments, that she was late to her interview because her first appointment ran long, and she was frustrated and unprofessional

because of these facts.  ([Filing No. 59 at 10-11](#) (citing [Filing No. 59-4 at 49-50](#).))  Pommier testified in his deposition that Searle was late for her interview and that she gave the appearance of "being bothered by issuing this test; frustrated; and rushing through the interview."  ([Filing No. 59-4 at 50](#).)

Third, Searle notes that Pommier had no recollection of contacting any of Hodges' references during the hiring process.  ([Filing No. 59 at 11](#).)  Pommier testified in his deposition that Hodges told him he was not permitted to contact her most recent employer, even though she was laid off from that job and not fired.  Pommier testified that, although he does not remember the conversation specifically, he would have asked Hodges about that and she would have given him an answer that put his mind at ease.  ([Filing No. 59-4 at 58-59](#).)

Searle's arguments and attempts to put facts in dispute are unpersuasive for two reasons.  First, her attacks on TSA's decision to hire Hodges instead of her for the administrative assistant position do not establish that her medical issues were a factor in TSA's decision not to hire her.  Meanwhile, TSA has designated evidence to support its hiring decision.  The record indicates that Hodges did a better job than Searle on the typing test because her reproduction of the sample job listing was more accurate.  ([Filing No. 58-14](#); [Filing No. 58-15](#); [Filing No. 58-16](#).)  Searle does not dispute that she was late to the interview, and Pommier described that she seemed frustrated that she was asked to perform the typing test, and that she was rushed—all understandable reasons to question whether someone is the right candidate for a job.  ([Filing No. 58-13 at 37-39](#).)  He also testified that Hodges "really stood out" for her "initiative," her attention to detail, and her proficiency with "design and computers"—qualities that made her an attractive candidate.  *Id.* at 36-37.

Second, and more importantly, Searle has not established that she was legally entitled to the administrative assistant position, a requirement for an FMLA interference claim. Under the FMLA, an employee who takes leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A-B). But Searle did not take FMLA leave nor, as the Court explained above, was she terminated for threatening to do so. Searle has not identified any part of the FMLA or any caselaw that entitles a person who is laid off for budgetary reasons to another job the employer happens to have an opening for at the time. Thus, her FMLA interference claim fails and TSA's Motion for Summary Judgment on Searle's FMLA interference claim is **granted**.

## B.  <u>FMLA Retaliation</u>

TSA also moves for summary judgment on Searle's FMLA retaliation claim, arguing it fails as a matter of law. The FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having attempted to exercise FMLA rights." 29 U.S.C. § 825.220. To prove her claim for retaliation under the FMLA, Searle must show: (1) she engaged in statutorily protected activity; (2) TSA took adverse employment action against her; and (3) the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900-01 (7th Cir. 2018). In deciding the question of causation, courts consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation. *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017).

There are two methods by which a plaintiff can avert summary judgment on her FMLA retaliation claim—the "direct method" and the "indirect method." *Lewis v. Sch. Dist. #70*, 523

F.3d 730, 741-42 (7th Cir. 2008). Using the direct method, the plaintiff avoids summary judgment by "proffering direct or circumstantial evidence of her employer's discriminatory motivation." *Id.* at 741. Under the indirect method, the plaintiff shows that she "was treated less favorably than other similarly situation employees who did not take FMLA leave, even though [s]he was performing [her] job in a satisfactory manner." *Burnett* at 481-82. Searle proceeds under the direct method. (Filing No. 59 at 15-22.)

A plaintiff proceeding under the direct method "can survive summary judgment by 'creating a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation.'" *Lewis* at 741 (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 721 (7th Cir. 2005)). Searle "need not prove that retaliation was the *only* reasons for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Id.* at 741-42 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)).

The parties agree that TSA took an adverse employment action against Searle. In fact, it took two adverse employment actions against her—both terminating her and declining to hire her for the open administrative assistant position. But TSA disputes the remaining elements of Searle's claim. It argues she did not engage in statutorily protected activity, and even if she did, she cannot show a causal connection between that activity and the adverse employment actions of which she complains.

### 1. **Statutorily Protected Activity**

TSA argues that Searle did not engage in protected activity because she "did not take FMLA leave or attempt to exercise her FMLA rights." (Filing No. 58 at 14.) TSA asserts that Searle's position is that she was retaliated against because her attorney sent a letter to TSA on

18

October 5, 2016 complaining of FMLA violations against Searle. Because the letter is not in evidence, TSA argues, there is nothing in the record to indicate TSA retaliated against Searle. *Id.* But Searle does not claim the October 5, 2016 letter from her attorney provided TSA's basis for retaliating against her. Instead, she contends "TSA retaliated against Searle after she put her employer on notice of her medical conditions, had FMLA-protected absences, and further notified TSA of upcoming FMLA-eligible leave." ([Filing No. 59 at 17](.)

As noted above, an employee need not expressly invoke the FMLA to put her employer on notice that she may need FMLA leave. The Seventh Circuit has held, "the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave." *Aubuchon* at 953. Once the employee does that, it becomes "the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement." *Id.* The Seventh Circuit has suggested that a mere entitlement to FMLA leave can lead to a successful FMLA retaliation claim. *See Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) ("To succeed, Pagel must of course be entitled to FMLA benefits…."), Seventh Circuit precedent makes it easy for an employee to engage in a statutorily-protected activity; she need only alert her employer that she may have a medical condition that would necessitate a leave of absence. For largely the same reasons the Court detailed in Section IV.B.1. of this Entry, it cannot say as a matter of law that Searle did not engage in statutorily-protected activity when she notified TSA of a serious health condition. Thus, the Court cannot grant TSA's summary judgment motion on the grounds that Searle did not engage in statutorily-protected activity.

2. **Causation**

Searle must next show that her entitlement to FMLA leave was a cause of the adverse employment action TSA took against her. *Freelain* at 900-01. The causation element may be met through either "a convincing mosaic of circumstantial evidence" or by a direct admission by TSA or one of its agents. *Pagel* at 631 (internal quotation omitted). Having no such admission to rely on, Searle looks to circumstantial evidence to show a dispute of fact as to whether her entitlement to FMLA leave was a factor in TSA's decision to terminate her and then not hire her as Pommier's administrative assistant. Circumstantial evidence may include "suspicious timing, ambiguous statements from which a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.* (citing *Jajeh v. Cnty. Of Cook*, 678 F.3d 560, 570 (8th Cir. 2012)).

Searle offers two examples to show that she was treated differently from similar employees when she was terminated. First, Searle notes that when TSA modified her position from full-time to part-time, it did not automatically install her in that position, but instead required her to apply if she wanted to continue in her position as a part-time employee. Citing Hull's deposition testimony, she argues this practice contrast when two other TSA employees' positions were changed from full-time to part-time and they were not required to reapply to remain in their positions. (Filing No. 59-5 at 6-12.) Neither of those two employees took FMLA leave during their time with TSA. (Filing No. 59-3 at 23-24.)

Second, Searle notes that the typing test she was required to take as part of her interview for the administrative assistant position had never previously been required as part of Pommier's hiring process. Pommier testified that he had discussed with TSA leadership using these types of tests to assess candidates but he "[didn't] know if we ever did with anybody else." (Filing No. 59-

4 at 41.)  When asked whether he thought they had used the test with any other position before using it to assess Searle and Hodges, Pommier responded, "No, not with any other role." *Id.* at 42. Searle argues that this test was administered—despite Pommier having direct knowledge of her word-processing abilities from having worked with her for several years—as a pretext to decline to hire her; because she would soon be taking FMLA leave.  (Filing No. 59 at 8-11.)

In response, TSA argues Searle was made aware of the part-time HR position created at Harbor Light but chose not to apply for it, and thus cannot claim that she would be employed in that position had TSA moved her to it automatically.  But TSA fails to cite any caselaw indicating the relevance of that assertion.  (Filing No. 62 at 13.)  Unlike an FMLA interference claim, harm is not an element of an FMLA retaliation claim.  To succeed on her claim that TSA retaliated against her, Searle only needs to show that she engaged in protected activity and that protected activity caused TSA to take an adverse employment action against her.  Whether she would have accepted part-time employment at Harbor Light is irrelevant to that inquiry.

TSA does not address Searle's argument that the typing test was a pretext for denying her the administrative assistant position, nor does it address the suspicious timing of the implementation of that test in TSA's hiring process.  It rightly identifies facts that imply legitimate motives for Pommier's decision not to hire Searle, but those facts do not doom Searle's FMLA retaliation claim.  They merely create a dispute of facts—some facts lead to the inference that Pommier did not hire Searle because she was unprofessional or seemed like she did not want the job, others indicate Pommier passed over Searle in retaliation for her serious medical condition and her entitlement to FMLA leave.

Searle has designated a "mosaic of circumstantial evidence." *See Pagel* at 631.  She has presented evidence showing employees who were similar to her except that they had not taken

FMLA leave being treated differently when their positions were reduced from full-time to part-time. She describes a pretextual reason for refusing to hire her as an administrative assistant and designated evidence of suspicious timing—that Pommier introduced this typing test for the first time when assessing candidates for the administrative assistant position. This type of evidence is specifically recognized in the Seventh Circuit as circumstantial evidence that could allow a jury to infer that an employee's FMLA status was the cause of her termination or other adverse employment action. At the summary judgment stage, the Court is not allowed to resolve this factual dispute. Because TSA has not shown that Searle's FMLA retaliation claim fails as a matter of law, the Motion for Summary Judgment on that claim is **denied**.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Filing No. 57) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as to Searle's claim of FMLA interference and that claim is dismissed with prejudice. The Motion is **DENIED** as to Searle's claim of FMLA retaliation, and that claim survives for trial.

**SO ORDERED.**

Date: 2/27/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John D. Franklin
WIDMAN & FRANKLIN LLC
john@wflawfirm.com

Kera L. Paoff
WIDMAN FRANKLIN LLC
kera@wflawfirm.com

Marilyn Lee Widman
WIDMAN & FRANKLIN
marilyn@wflawfirm.com

Edward E. Hollis
FAEGRE BAKER DANIELS LLP (Indianapolis)
edward.hollis@faegrebd.com

Jenie Van Hampton
FAEGRE BAKER DANIELS LLP (Indianapolis)
jenie.vanhampton@faegrebd.com

Sarah Elizabeth Caldwell Breslin
FAEGRE BAKER DANIELS LLP (Indianapolis)
sarah.breslin@faegrebd.com